# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0232-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RANDALL MACUSKI,

    Defendant-Appellant.

_____

Submitted June 4, 2024 – Decided July 10, 2024

Before Judges Mayer and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 03-12-2425.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (John J. Bannan, Designated Counsel, on the brief).

Raymond S. Santiago, Monmouth County Prosecutor, attorney for respondent (Alecia Woodard, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Randall Macuski appeals from the August 18, 2023 order denying both his petition for post-conviction relief (PCR) without an evidentiary hearing and his motion to withdraw the guilty plea leading to his 2004 conviction for the fourth-degree offense of failing to register as a Megan's Law[1] offender, N.J.S.A. 2C:7-2(a).[2]  Because defendant's PCR petition was time barred and otherwise lacked merit, and because his motion to withdraw his guilty plea also lacked merit, we affirm the challenged order.

I.

In November 1997, defendant agreed to plead guilty to two counts of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a), in exchange for the State recommending a probationary sentence, subject to Megan's Law requirements, and the dismissal of defendant's three remaining charges, including two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(b).

---

[1]  N.J.S.A. 2C:7-1 to -23.

[2]   N.J.S.A. 2C:7-2(a)(1) provides, in part, "[a] person who has been convicted . . . for commission of a sex offense . . . shall register as provided in [other] subsections . . . of this section."  A violation of this statute is now a third-degree offense.  N.J.S.A. 2C:7-2(a)(3).

Prior to sentencing, defendant signed various forms confirming he understood: (1) he was required to annually verify his address in person with the local police department; and (2) as a convicted sex offender, he could "be charged with a fourth-degree crime, punishable by up to [eighteen] months in prison (pursuant to N.J.S.A. 2C:7-2) if [he] fail[ed] to register, re-register, verify [his] address[,] or provide correct information as required by law."[3] One of the forms defendant signed was entitled, "Acknowledgement of Duties of Address Verification and Re-registration," and plainly stated, "I understand that if I remain offense free for [fifteen] years from the date of conviction or release from prison, whichever is later, I may apply to the Superior Court to be relieved of my obligation to register."

On December 12, 1997, the trial court sentenced defendant consistent with the plea agreement, imposing concurrent three-year probationary terms for the endangering offenses. The judge also placed defendant on community supervision for life and directed him to comply with the registration requirements of Megan's Law. On January 15, 1998, the judge entered a conforming judgment of conviction (JOC).

---

[3] "[I]n 2007, the Legislature [prospectively] upgraded failure to register to a third-degree offense." State v. Brown, 245 N.J. 78, 82-83 (2021).

A-0232-23

Eight months later, defendant initialed and executed a Uniform Monmouth County Sex Offender Registration Form. One section of that form, entitled "Acknowledgment of Duty to Register," explicitly stated in capital letters, "I understand that failure to register, re[-]register[,] or re[-]verify my address is a crime of the fourth degree."

Defendant satisfied his Megan's Law requirements over the next four years. When he registered with the Neptune Police Department (NPD) on June 21, 2002, he initialed and signed another Acknowledgment of Duty to Register, confirming he understood "failure to register, re[-]register or re[-]verify [his] address [wa]s a crime of the fourth degree." Defendant also signed a separate notice stating he was required to "re-register with the [NPD] one year from . . . June 21, 2002."

Defendant failed to re-register on June 21, 2003. Four months later, the police went to his mother's home address in Neptune, but defendant was not there. Later that day, he went to police headquarters, claiming he thought he had to re-register in December 2003.

Defendant was subsequently indicted on the charge of fourth-degree failure to register as a convicted sex offender. In January 2004, he pled guilty to this offense in exchange for the State's recommendation that he receive a probationary sentence. During his plea colloquy, defendant testified he: (1) was

4

not forced or threatened to plead guilty to the failure to register charge; (2) was pleading guilty to the offense because he was guilty; and (3) was convicted of a sex offense "in 1997 . . . that thereafter required . . . [he] register under Megan's Law." He also testified he "did[ not] move from [his] residence," but "simply forgot" to timely re-register in June 2003 as required.

On March 19, 2004, defendant was sentenced in accordance with his plea agreement to a one-year probationary term. He did not appeal from his conviction or sentence.

On March 20, 2012, defendant filed a pro se PCR petition, challenging his 2004 conviction. While he did not dispute that he failed to timely re-register in June 2003, he argued he ultimately re-registered "on [his] own when [he] realized [his] mistake." He also certified he re-registered "correctly until [he] moved [one] year[] to [his] mother[']s ap[artmen]t."

On the same day defendant filed his petition, the trial court notified the Office of the Public Defender (OPD) of the filing, stating: (1) defendant was "indigent"; (2) his pro se petition was "deficient" and "not cognizable under R[ule] 3:22-2";[4] and (3) the petition was "filed more than [five] years after the

---

[4] Rule 3:22-2 provides:

A petition for [PCR] is cognizable if based upon any of the following grounds:

(a) Substantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey;

(b) Lack of jurisdiction of the court to impose the judgment rendered upon defendant's conviction;

(c) Imposition of sentence in excess of or otherwise not in accordance with the sentence authorized by law if raised together with other grounds cognizable under paragraph (a), (b), or (d) of this rule. Otherwise[,] a claim alleging the imposition of sentence in excess of or otherwise not in accordance with the sentence authorized by law shall be filed pursuant to R[ule] 3:21-10(b)(5).

(d) Any ground heretofore available as a basis for collateral attack upon a conviction by habeas corpus or any other common-law or statutory remedy.

(e) A claim of ineffective assistance of counsel [(IAC)] based on trial counsel's failure to file a direct appeal of the [JOC] and sentence upon defendant's timely request.

6

date of the entry of the [JOC] on March 19, 2004." The notice directed the OPD to file an amended petition within ninety days of an order assigning counsel to defendant's case, with the amended petition to "alleg[e] facts showing that the delay was due to . . . defendant's excusable neglect and that there [wa]s a reasonable probability that if . . . defendant's factual assertions were found to be true[,] enforcement of the time bar would result in a fundamental injustice." Finally, the notice warned that defendant's petition could be dismissed unless the trial court received "an amended petition correcting the deficiencies." The following day, the trial court issued an order designating the OPD as defendant's assigned counsel. Nothing in the record shows defendant's deficient petition was timely cured following this assignment.

In July 2012, defendant sent a letter to the trial court seeking to adjourn any hearing on his petition "until [he was] ready to properly state [his] case." The record is devoid of any submissions reflecting defendant sought to be heard on the petition thereafter.

On February 6, 2023, defendant filed another pro se PCR petition, again challenging his 2004 conviction. He argued he "should be removed from having to register" under Megan's Law. Additionally, he certified that prior to his 2004 conviction, he "was renting a room in a house in Lakewood," and at some point, "[t]he owner stopped by and said everyone ha[d] to move now," so defendant

A-0232-23

"packed up" and "went to [his] my mother[']s in Neptune." Defendant further certified he "then went right to [the NPD] to register," and "[a]fter a while of being there[,] they said [he] was in violation" of his obligation to register as a convicted sex offender. Defendant also contended "[d]etectives made something up to violate [him]."

In July 2023, assigned counsel filed an amended petition, alleging, in part, plea counsel was ineffective in 2004 for failing to advise defendant that if he pled guilty to the failure to register charge, he would be barred from being released from his Megan's Law requirements. Accordingly, PCR counsel argued defendant should be permitted to withdraw his guilty plea to this charge. Counsel further contended the 2023 PCR petition should not be denied as time barred because defendant's delay in filing this petition was attributable to excusable neglect. PCR counsel explained that according to defendant, it was not until 2022 that defendant was advised by an attorney he could seek PCR relief.

On August 18, 2023, the trial court entered an order denying defendant's PCR petition without an evidentiary hearing. It also denied defendant's motion to withdraw the guilty plea resulting in defendant's 2004 conviction.

In the PCR judge's accompanying thirteen-page opinion, he found the 2023 PCR petition was time barred because: it was "filed more than five years

after entry of the [JOC]"; and defendant failed to demonstrate "the delay was 'due to [his] excusable neglect and . . . there [wa]s a reasonable probability that if defendant's factual assertions were found to be true, enforcement of the time[] bar would result in a fundamental injustice.' R. 3:22-12(a)(1)." In rejecting defendant's excusable neglect claim, the judge noted defendant certified "he was never informed of the right to file a PCR petition or of the five-year limitation" to file the petition. However, the judge found defendant's "pro se filing" from 2012 "completely contradict[ed] defendant's current claim that he 'was never aware of [PCR] proceedings.'" The judge also observed that when defendant was convicted in 2004, neither plea counsel nor the sentencing court was required under the Court Rules to "inform [a] defendant of the time limitations in which to file petitions for [PCR]."[5]

Although the judge dismissed the 2023 PCR petition as time barred, he stated, "[e]ven if this court were to consider the substance of defendant's petition, it lack[ed] merit as [defendant] . . . failed to satisfy either prong of the

---

[5] Although Rule 3:21-4(i) was not in effect when defendant was sentenced, it now reads, in part, "[a]fter imposing sentence, . . . the court shall advise the defendant of the right to appeal . . . . The court shall also inform the defendant of the time limitations in which to file petitions for [PCR]."

Strickland test."[6]  As part of his Strickland analysis, the judge quoted State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009), and noted that because "defendant's conviction was the result of a guilty plea," he had to demonstrate "there [wa]s a reasonable probability that, but for counsel's errors," defendant would have rejected the State's plea offer and "insisted on going to trial."  The judge found defendant's proofs were lacking in this regard.

Regarding the first and second Strickland prongs, respectively, the judge concluded "defendant . . . failed to demonstrate that plea counsel made errors so serious that he was not functioning as . . . 'counsel' guaranteed by the Sixth Amendment," and "defendant . . . failed to demonstrate prejudice."  The judge specifically rejected defendant's contention that he was prejudiced by plea counsel's performance based on the attorney's failure "to inform him that his conviction would affect his ability to be removed from Megan's Law."  The judge reasoned that when defendant pled guilty in 2004, "he signed a Megan's Law registration form wherein he acknowledged . . . he had to remain offense free for fifteen years . . . to apply to be relieved from his obligations under

---

[6]  Strickland v. Washington, 466 U.S. 668, 687 (1984) (requiring a defendant seeking PCR on IAC grounds to demonstrate:  (1) the particular manner in which counsel's performance was deficient; and (2) that the deficiency prejudiced defendant); see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-part test in New Jersey).

Megan's Law and had to continuously register in the communities where he would reside." Based on these findings, the judge concluded defendant failed to establish a prima facie case of IAC, and thus, was not entitled to an evidentiary hearing.

Turning to defendant's motion to withdraw the guilty plea leading to his 2004 conviction, the judge examined each of the four factors set forth in State v. Slater, 198 N.J. 145 (2009).[7] The judge found the factors militated against withdrawal of the plea and defendant's "motion to withdraw his plea ha[d] no merit."

## II.

On appeal, defendant raises the following arguments for our consideration:

POINT I

DEFENDANT'S SENTENCE FOR VIOLATING N.J.S.A. 2C:7-2(a) WAS ILLEGAL.

---

[7] The four factors a trial court must consider in evaluating a motion to withdraw a guilty plea are: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." Slater, 198 N.J. at 150.

POINT II

THE PCR COURT ERRED IN FINDING THAT [PCR]
WAS PROCEDURALLY BARRED.

(A) LEGAL STANDARDS GOVERNING
APPLICATIONS FOR [PCR].

(B) DEFENDANT'S PCR IS NOT
PROCEDURALLY BARRED.

POINT III

BECAUSE [DEFENDANT] RECEIVED [IAC], THE
PCR COURT ERRED IN DENYING [HIS] PETITION
FOR PCR.

(A) LEGAL STANDARDS GOVERNING
APPLICATIONS FOR [PCR].

(B) DEFENSE COUNSEL WAS
INEFFECTIVE FOR[,] AMONG OTHER
REASONS[,] FAILING TO
ADVISE . . . DEFENDANT OF THE
[E]FFECT HIS 2004 CONVICTION
WOULD HAVE ON HIS ABILITY TO BE
REMOVED FROM MEGAN'S LAW.

(C) DEFENSE COUNSEL WAS
INEFFECTIVE FOR[,] AMONG OTHER
REASONS[,] FAILING TO SEEK THE
DISMISSAL OF THE 2003 INDICTMENT.

POINT IV

DEFENDANT'S PLEA SHOULD BE VACATED DUE
TO MANIFEST INJUSTICE.

A-0232-23

POINT V

IN THE ALTERNATIVE, BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT IN DISPUTE, THE PCR COURT ERRED IN DENYING [DEFENDANT] AN EVIDENTIARY HEARING.

    (A) LEGAL STANDARDS GOVERNING [PCR] EVIDENTIARY HEARINGS.

    (B) IN THE ALTERNATIVE, [DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING.

These arguments lack merit. R. 2:11-3(e)(2). Accordingly, we affirm the August 18, 2023 order and add the following comments.

When no evidentiary hearing is conducted on a PCR petition, we review its denial de novo. State v. Harris, 181 N.J. 391, 419 (2004). A PCR court's decision to proceed without an evidentiary hearing is reviewed for an abuse of discretion. State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013).

Pursuant to Rule 3:22-12(a)(1), a first petition for PCR must be filed no "more than [five] years after the date of entry pursuant to Rule 3:21-5 of the [JOC] that is being challenged unless" the defendant establishes the delay in filing "was due to defendant's excusable neglect and . . . there is a reasonable probability that if the defendant's factual assertions were found to be true[,] enforcement of the time bar would result in a fundamental injustice." R. 3:22-12(a)(1)(A). However, under Rule 3:22-12(a)(1)(B), a late petition may be

considered by the trial court if filed within one year from the date of discovery of the factual predicate on which relief is sought "if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence." R. 3:22-12(a)(2)(B). "[I]gnorance of the law and rules of court does not qualify as excusable neglect." State v. Jackson, 454 N.J. Super. 284, 295 n.6 (App. Div. 2018) (quoting State v. Merola, 365 N.J. Super. 203, 218 (Law Div. 2002)).

"[A] court should relax Rule 3:22-12's [time] bar only under exceptional circumstances. The court should consider the extent and cause of the delay, the prejudice to the State, and the importance of the petitioner's claim in determining whether there has been an 'injustice' sufficient to relax the time limits." State v. Mitchell, 126 N.J. 565, 580 (1992). "[T]o establish injustice[,] there should at least be some showing that" "inadvertent errors mistakenly impacted a determination of guilt or otherwise 'wrought a miscarriage of justice.'" Id. at 587 (quoting State v. Laurick, 120 N.J. 1, 13, 10 (1990)). "Absent compelling, extenuating circumstances, the burden to justify filing a petition after the five-year period will increase with the extent of the delay." Id. at 580.

Second or subsequent petitions are subject to more stringent standards. Under Rule 3:22-12(a)(2), a second or subsequent PCR petition must be filed: (1) within one year of the date on which a new constitutional right is recognized by the courts; (2) "the date on which the factual predicate for the relief sought

was discovered"; or (3) "the date of the denial of the first or subsequent application for [PCR] where [IAC] that represented the defendant on the first or subsequent application for [PCR] is being alleged." A second or subsequent PCR petition must be dismissed unless it complies with Rule 3:22-12(a)(2), and pleads, on its face, one of the three criteria under Rule 3:22-12(a)(2). R. 3:22-4(b).

Here, defendant's first PCR petition in 2012 was not timely filed under Rule 3:22-12(a)(1), and the trial court correctly deemed it "not cognizable under R[ule] 3:22-2." Moreover, as already discussed, nothing in the record shows defendant or assigned counsel timely cured the deficiencies in this petition, consistent with the trial court's March 20, 2012 notice, or that defendant pursued his requested relief under this petition.[8] Thus, we are persuaded defendant's 2023 PCR petition was a "second or subsequent petition," rather than a first PCR petition, and it was properly dismissed as time barred under Rule 3:22-12(a)(2), albeit for reasons somewhat different than those enunciated by the trial court. See State v. Heisler, 422 N.J. Super. 399, 416 (App. Div. 2011) (noting a reviewing

---

[8] Whether the 2012 PCR petition was dismissed without prejudice, per Rule 3:22-12(a)(4), or withdrawn is of no moment because the Rules do not indicate the withdrawal of a PCR petition should be treated differently than a PCR petition dismissed without prejudice.

court is free to affirm "on grounds different from those relied upon by the trial court").

Next, we agree with the PCR judge's determination that "[d]efendant failed . . . to truthfully articulate what caused a nineteen-year delay in filing th[e 2023] petition."  Indeed, the record supports the judge's conclusion that the filing of defendant's 2012 PCR petition "completely contradict[ed his] current claim that he 'was never aware of [PCR] proceedings because he was never advised about his right to file a [PCR] petition nor of the five-year time bar.'"

Because we concur with the judge's determination that defendant's 2023 petition was time barred, it is unnecessary to address the merits of defendant's IAC claims.  However, for the reasons the judge expressed, we are persuaded defendant failed to establish a prima facie case of IAC and thus, no evidentiary hearing was warranted.  See State v. Preciose, 129 N.J. 52, 462-63 (1992).

We need only briefly discuss defendant's newly raised contention that his sentence for violating N.J.S.A. 2C:7-2(a)(1) was illegal because of the Supreme Court's decision in State v. Gyori, 185 N.J. 422 (2005).  In Gyori, the Court adopted a dissenting opinion from our court and held that a violation of N.J.S.A. 2C:7-2(e), (directing a convicted sex offender to verify his or her address,) was not a fourth-degree crime because the wording of the statute at that time did not

adequately specify this criminal exposure.  Id. at 422; see also State v. Gyori, 373 N.J. Super. 559 (App. Div. 2004) (Wecker, J.A.D., dissenting).

Although we address this argument for the first time on appeal, we recognize we need not consider any claim not raised before the trial court if the matter does not involve jurisdictional issues or matters of great public interest, State v. Robinson, 200 N.J. 1, 20 (2009).  We are satisfied neither exception applies here but address the issue for the sake of completeness.

"We review the legality of a sentence de novo."  State v. Steingraber, 465 N.J. Super. 322, 327 (App. Div. 2020).  "There are two categories of illegal sentences:  (1) those that exceed the penalties authorized by statute for a particular offense and (2) those that are not in accordance with the law, or stated differently, those that include a disposition that is not authorized by our criminal code."  State v. Schubert, 212 N.J. 295, 308 (2012) (citing State v. Murray, 162 N.J. 240, 246-47 (2000)).  An illegal sentence "may be corrected at any time before it is completed."  Murray, 162 N.J. at 247 (emphasis added); see also R. 3:21-10(b)(5).  Here, defendant's 2004 sentence was not illegal.  Further, because he completed this sentence, it cannot be corrected.

Defendant also relies on Gyori to belatedly argue plea counsel was ineffective for failing to seek dismissal of the indictment leading to defendant's 2004 failure to register conviction.  Because this IAC claim is time barred for

the reasons we stated, we need not consider it. However, we also are persuaded the argument fails under the Strickland standard.

The Court did not decide Gyori until December 2005. Moreover, our opinion in Gyori did not issue until December 2004, some nine months after defendant was sentenced on his 2004 conviction. Thus, plea counsel was not ineffective for failing to move for dismissal of the indictment preceding defendant's 2004 conviction because no new rule of law concerning the scope of N.J.S.A. 2C:7-2(e) was announced by the Court, nor had Judge Wecker's dissent been published prior to defendant's 2004 conviction. Stated differently, plea counsel would have had no reason to disregard the existing rule of law by filing a dismissal motion which was unlikely to succeed. It is well settled that "[i]t is not [IAC] for defense counsel not to file a meritless motion." State v. O'Neal, 190 N.J. 601, 619 (2007).

Finally, we reject defendant's contention the trial court erred in denying his motion to withdraw the guilty plea resulting in his 2004 conviction. A motion to withdraw a plea made prior to a defendant's sentencing is governed by the "interests of justice" standard under Rule 3:9-3(e). Slater, 198 N.J. at 156. By contrast, a motion made after sentencing is subject to a "manifest injustice" standard, per Rule 3:21-1. Ibid. Regardless of the timing, "the burden rests on the defendant, in the first instance, to present some plausible basis for

[the] request, and [the defendant's] good faith in asserting a defense on the merits." Ibid. (quoting State v. Smullen, 118 N.J. 408, 416 (1990)).

Here, the judge fully explained why none of the four Slator factors weighed in defendant's favor. We discern no basis to question the judge's analysis of these factors. Further, defendant failed to establish a manifest injustice would result from a denial of the Slater motion, considering he: (1) waited approximately nineteen years to seek to withdraw his guilty plea; (2) admitted during his 2004 plea colloquy that he was guilty of the offense of failing to register; and (3) testified he was aware of his obligation to annually register but made a "mistake" in failing to do so on a timely basis in 2003.

To the extent we have not addressed defendant's remaining arguments, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

19

A-0232-23